FILED
2004 MAR 30 PM 1:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **BRYANT SKANES,** | } |
| **Plaintiff,** | } |
| vs. | } CASE NO. CV 01-B-1040-NW |
| **RENTER'S CHOICE, d/b/a Rent-A-Center,** | } |
| **Defendant.** | } |

ENTERED
MAR 30 2004

### MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by defendant Renter's Choice, d/b/a Rent-A-Center ("RAC"). In his Complaint, plaintiff Bryant Skanes alleges defendant (1) demoted him, because of his race, African-American, in violation of Title VII and 42 U.S.C. § 1981; (2) subjected him to a racially hostile work environment; (3) constructively discharged him, and (4) violated his privacy rights under Alabama common law.[1] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

### I.   Factual Summary

In August 1998, Renter's Choice, Inc. purchased Thorn America, Inc. ("Thorn") and changed the name of the corporation to Rent-A-Center, Inc. (Doc. 34, Tab A at 27.) In December 1998, Renter's Choice, Inc. and Rent-A-Center, Inc. merged into a single corporate entity under the name Rent-A-Center. (Doc. 34, Tab A at 27.) After the merger, RAC's structure

---

[1]Skanes is no longer pursuing a claim for invasion of privacy. (Pl.'s Mem. Br. in Opp.'n to Def.'s Mot. for Summ. J., p. 1, n. 1.)

was reorganized, eliminating certain positions and establishing new and more stringent requirements for store operations. (Doc. 34, Tab C at 62-64.) Many former Thorn employees had difficulty adapting to the Renter's Choice systems, policies, and procedures following the merger. (*Id.*)

      Skanes began working for Rent-A-Center as a Manager Trainee in April 1998. (Doc. 34, Tab A at 25, 37.) After the Renter's Choice/Rent-A-Center merger, Skanes was reclassified as an Assistant Manager. (Doc. 34, Tab A at 37.) While an Assistant Manager, Skanes reported directly to Ralph Moten, an African-American. (Doc. 34, Tab A at 48.) RAC promoted Skanes to Store Manager in January 1999. (Doc. 34, Tab. A at 50-51.) Skanes testified that Eric Peters, his Market Manager (supervisor), promoted him to Store Manager, although his change of status notice was signed by Ralph Moten, and Peters does not recall being involved in the promotion decision for Skanes. (Doc. 34, Tab A at 46-47; Doc. 40, Ex. 3; Ex. 5 at 36.) RAC demoted Skanes from store manager to assistant manager on March 10, 1999. (Doc. 34, Tab A at 77.)

      After he became Store Manager, Peters warned Skanes about performance problems. (Doc. 34, Tab A at 65-68; Tab D, Ex. 5.) Peters specifically warned Skanes about poor collection numbers, poor store growth numbers, and inventory discrepancies. (Doc. 34, Tab D at 57, 108.) Peters testified that Skanes's performance did not improve after he reviewed and discussed his store's performance problems. (Doc. 40, Tab 5 at 57; Doc. 34, Tab D at 57, 108.) On February 12, 1999, Peters issued a written Market Manager Store Opportunity Checklist to Skanes, which indicated the store suffered from poor appearance, inventory problems, and cash shortages. (Doc. 34, Tab D, Ex. 5; Tab A at 65-68.) Roger Estep, white male, the Regional Director and Peters's supervisor, also found significant problems with the store; these included

problems with inventory management, paperwork processing, a poorly maintained display area, a violation of the dress code, and a lack of progress in operational issues. (Doc. 34, Tab E at 41-42, 48, 52-54.) Peters testified he provided Skanes with as much training as other store managers in his market received. (Doc. 34, Tab D at 40-41.)

In March of 1999, Peters replaced Skanes with Kevin Ainsworth. (Doc. 34, Tab D at 63.) Peters had personally trained Ainsworth and he believed Ainsworth knew RAC's systems "inside and out." (Doc. 34, Tab D at 65, 125.)[2] In contrast, Peters believed Skanes "was way in over his head" as a Store Manager. (Doc. 34, Tab D at 121-22.) Skanes admitted that he did not have a good understanding of RAC's operations and procedures and that he needed training in some areas. (Doc. 34, Tab A at 49, 54.)

Skanes resigned on April 2, 1999. (Doc. 34, Tab A at 124; Doc. 40, Ex. 4 at 67.) At that time, he informed his new market manager, Mansel Guin, an African-American, that he was being harassed by Peters and Estep, the Regional Director. (Doc. 34, Tab A at 117-18.) Guin encouraged Skanes to "stick in there," but Skanes resigned. (Doc. 34, Tab A at 124; Doc. 40, Ex. 4 at 67.)

Skanes alleges Peters and Estep made racially derogatory comments. (Pl. Br. in Opp. to Def. Mot. for Summ. J. at 8-9; Doc. 40, Ex 1 at 101; Ex. 11 ¶ 2.) According to plaintiff, Estep would make comments regarding the clothes African-American employees wore including a statement about 'the loud colors ya'll wear.' Estep also made statements regarding collection practices such as 'all you people do in the hood is sit around, eat barbeque and chicken so ya'll

---

[2]During his deposition, Skanes testified he did not know Ainsworth's name or anything about Ainsworth's educational background, work experience, or history with RAC. (Doc. 34, Tab A at 100.)

should be able to catch them and collect.' (Doc. 40, Ex. 11 ¶ 2.) Plaintiff also introduced evidence that Estep once said there "ain't no back-up" to the store manager in place. According to Lawrence Kahlden, Estep said, "you didn't see them two boys (referring to African-Americans) that walked out? . . . You can look and that and see there ain't no back up." (Doc. 40, Ex. 18 at 37-38).[3]   Roger Estep has acknowledged making the statement that Rent-A-Center needed "a better class of people." (Doc. 40, Ex. 2 at 107.)[4]

In plaintiff's brief in opposition to defendant's Motion for Summary Judgment, plaintiff argued extensively about racially derogatory comments and conduct attributed to an individual named Randy Watkins, Huntsville Market Manager. *(See* Plaintiff's Brief in Opposition, pp. 10, 12-15.) (Ex. 18 at 37-38.) Skanes testified that he did not know Randy Watkins. (Doc. 44, Ex. 2 p. 136.) Randy Watkins stated in his Affidavit that he does not know the plaintiff or recall ever meeting him. (Defendant's Responsive Evidentiary Submission. ¶ 3). Watkins never supervised the plaintiff. *Id.*

Soon after Peters demoted Skanes, Peters was demoted from Market Manager to Store Manager by Roger Estep. (Doc. 34, Tab D at 14-15, Doc. 40, Tab 5 at 62.) Peters served as Market Manager for only about three months. (Doc. 34, Tab D at 15.)

---

[3]This comment was not made in plaintiff's presence and there is no evidence that he was told about the comment during his employment.

[4]Although plaintiff states that "during his employment [he] heard racially derogatory comments by Roger Estep and Eric Peters," *id.*, the specific racially derogatory comments are attributed to Peters.

II. **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

III. **Discussion**

   A. **Demotion.**

The elements of a Title VII discrimination claim and a § 1981 claim are identical. *Standard v. A.B.E.L. Serv.'s, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Dudley v. Wal-Mart Stores*, 931 F. Supp. 773, 784 (M.D. Ala. 1996). When plaintiff offers no direct evidence of

discrimination, he must prove his case through circumstantial evidence, using the familiar burden-shifting analysis set out in *McDonnell Douglas*. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the Supreme Court established the "basic allocation of burdens and order of presentation of proof" in disparate treatment actions alleging discriminatory treatment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252-53. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). When the plaintiff fails to "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual," the employer is entitled to judgment as a matter of law on the plaintiff's claim. *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000); *see also Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997). This burden-shifting analysis is applicable in the instant case, as plaintiff has not offered any direct evidence of discrimination.

    1.    **Prima Facie Case.**

To establish a prima facie case of wrongful demotion, plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was demoted despite these qualifications; and (4) another employee who is not a member of the protected class was

given the position. *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999); *Standard v. A.B.E.L. Serv.'s*, 161 F.3d 1318, 1333 (11th Cir. 1998); *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000).

Plaintiff, an African-American, is a member of a protected class, and RAC replaced him with someone outside the protected class, Ainsworth, a white male. For the purposes of summary judgment, the court will assume plaintiff was qualified for the position of Store Manager. Thus, plaintiff has established a prima facie case of discrimination.

### 2. Articulated, Non-Discriminatory Reason.

Once plaintiff has established a prima facie case, defendant must present evidence to raise a genuine issue of fact as to whether it discriminated against plaintiff. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Increased Minority Participation by Affirmative Change Today of Northwest Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990). Defendant must use admissible evidence to clearly set forth the reasons for plaintiff's demotion, and the reasons must be legally sufficient to justify a judgment for the defendant. *Id.*

Defendant states it demoted plaintiff because his performance as Store Manager was unacceptable. Defendant argues plaintiff was adequately warned about his failures as a Store Manager. Plaintiff's supervisor, Peters, warned him prior to his demotion about significant performance problems. These problems included poor appearance of the store, inventory problems, and cash shortages. According to Peters, plaintiff did not improve his performance after he and Peters reviewed and discussed the problems with plaintiff's store. Roger Estep, Regional Manager and Peters's supervisor, also observed performance and appearance problems at plaintiff's store. Estep found problems with inventory management, paperwork processing, a

poorly maintained display area, a violation of the dress code, and a lack of progress in operational issues. These reasons are sufficiently clear to shift the burden to plaintiff to prove that defendant's articulated reasons for his demotion are unworthy of credence.

### 3. Pretext.

Because defendant has articulated a legitimate, non-discriminatory reason for plaintiff's demotion, the inference of discrimination raised by the prima facie case disappears. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)(quoting *Burdine*, 450 U.S. at 255). Plaintiff must then prove defendant's articulated reasons are a pretext and that the real reason for his demotion was his race. *Id.* at 507-08 (quoting *Burdine*, 450 U.S. at 256). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason [is] false, and that discrimination [is] the real reason." *Id.* at 515 (emphasis omitted).

Defendant contends Peters made the decision to demote plaintiff based upon plaintiff's inadequate performance while Store Manager, and his failure to correct identified problems in his store.[5] Plaintiff has not presented evidence on which a reasonable jury could find that Peters and Estep's assessment of his performance was wrong or that the articulated reasons presented by Peters and Estep are unworthy of credence.

As argument of pretext, plaintiff contends that Estep was the decision maker, and that a reasonable jury could find Estep was motivated by racial animus because Estep has made racially derogatory comments about African-Americans during plaintiff's employment with RAC. The

---

[5] In his deposition, plaintiff testified that he received training prior to his promotion to Store Manager. Plaintiff stated he received training from Ralph Moten, his Store Manager at the time and additional training from Peters after he was promoted. Plaintiff has not offered evidence showing that any similarly situated RAC employees received more training than he received.

court will accept as true plaintiff's argument that Estep was involved in the decision to demote him. Plaintiff has offered evidence that Estep made racially derogatory comments.[6] As plaintiff correctly argues, racially derogatory comments unrelated to the personnel decision at issue can provide circumstantial evidence of discrimination. *See Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002); *Ross v. Rhodes Furniture*, 146 F.3d 1286 (11th Cir. 1998).

>    In *Ross*, the court found that:
>
>    Because Ross's case turned on circumstantial evidence, the proper inquiry is whether Sweeney's "Tarzan" remark and Kirkland's remark, when read in conjunction with the entire record, are circumstantial evidence of those decisionmakers' discriminatory attitude. If so, the court must then determine whether such circumstantial evidence, along with other evidence (including Ross's prima facie case), might lead a reasonable jury to disbelieve [defendant's] proffered reason for firing Ross. We conclude that these comments, considered together with the fact that [the supervisor who was instrumental in defendant's decision to fire plaintiff] had received tips [the conduct for which plaintiff was fired], support the jury's rejecting [defendant's] proffered explanation for firing Ross.

*Id.* at 1292. As the *Ross* court recognized, racially discriminatory remarks by a decisionmaker can be circumstantial evidence of a decisionmaker's discriminatory attitude.

In *Rojas* plaintiff presented evidence that the decisionmaker had made a comment that another woman did not deserve a particular job because she was a woman. 285 F.3d at 1342. The court distinguished the facts from the facts in *Ross* as follows:

>    In *Ross*, fairly strong additional evidence supported a finding of pretext (specifically, that the supervisor who had fired plaintiff had been engaged in the same activity for which plaintiff was fired). But no such additional evidence exists here. The *Ross* court, in fact, explicitly noted that the evidence relating to the discriminatory comments had to be "read in conjunction with the entire

---

[6] Several of the comments could be race neutral depending on context, but for purposes of summary judgment, the court will consider that Estep made racially derogatory comments at times before plaintiff's termination.

> record" and "considered together with" the other evidence in the case. Because the [decisionmaker's] alleged comment was . . . an isolated comment, unrelated to the decision to fire [plaintiff], it, alone is insufficient to establish a material fact on pretext.

285 F.3d at 1339. Thus, the question in this case is whether there is other evidence, which when considered with Estep's discriminatory comments, would allow a reasonable jury to find pretext.

In addition to Estep's remarks, and as additional evidence of pretext, plaintiff argues that defendant did not demote a white store manager, Robert Walker, whose store problems were as serious as the problems in the store managed by plaintiff. A comparison of the evidence pertaining to Walker's store and plaintiff's store reveals that although both stores had serious problems, Peters felt that plaintiff's performance did not improve while there was some evidence of improvement in Walker's store. The evidence pertaining to Walker when combined with Estep's comments are insufficient evidence on which a reasonable jury could find pretext as to defendant's stated legitimate, non-discriminatory reason for plaintiff's discharge.

Because plaintiff has not offered sufficient evidence that defendant's legitimate, non-discriminatory reasons for plaintiff's demotion were pretext for unlawful discrimination, defendant is entitled to summary judgment on plaintiff's wrongful demotion claim.

### B.   Hostile Work Environment.

To establish a racially hostile work environment, plaintiff must show that he was subjected to racial harassment "severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Plaintiff must prove not only that he perceived the environment to be hostile and abusive because of his race, but also that a reasonable person would perceive the environment to be

hostile, because of race. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000)(citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)(en banc)). Plaintiff must show: (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on plaintiff's race, and (4) the harassment complained of affected a term, condition, and privilege of employment in that it was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Gupta*, 212 F.3d at 582; *Mendoza*, 195 F.3d at 1246; "The mere utterance of a racial epithet which engenders offensive feelings in an employee does not sufficiently affect the terms, conditions, or privileges of employment to a significant degree so as to constitute an actionable hostile work environment claim under Title VII. *Harris*, 510 U.S. at 23; *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995)(racial slurs spoken by coworkers must be so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility").

Plaintiff has not shown sufficient evidence to establish a racially hostile work environment. While some stray remarks which could be considered racial in nature were made in plaintiff's presence, they are not severe or pervasive enough that a reasonable person would find his working environment to be hostile or abusive because of race.

Although plaintiff argues in his brief that certain of defendant's managers made racially derogatory comments, other than the statements attributed to Estep above, none of these

comments were made towards plaintiff or in his presence.[7] *See Russell v. Board of Trustees of University of Illinois at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001)("When harassing statements are 'directed at someone other than the plaintiff, the impact of [such] "second hand harassment" is obviously not as great as the impact of harassment directed at the plaintiff.'" (quoting *McPhaul v. Board of Commissioners*, 226 F.3d 558, 567 (7th Cir.2000))). Plaintiff testified he could not recall any specific details regarding any alleged harassment, other than the comments he attributed to Estep. (Doc. 40, Ex. 1 at 102.) Estep's comments were not commonplace enough to establish an atmosphere of racial harassment.

Because plaintiff has not offered sufficient evidence on which a reasonable jury could conclude a racially hostile work environment existed, defendant is entitled to judgment as a matter of law on plaintiff's racially hostile work environment claim.

C.   **Constructive Discharge.**

A constructive discharge claim may only be established when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998). The burden of proof for constructive discharge is objective, rather than subjective, and the court considers what a reasonable person in the employee's shoes would do. *Id; Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989). Constructive discharge claims require a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Benningfield v. City of Houston*, 157 F.3d 367, 378 (5th Cir. 1998)(citing *Pittman*

---

[7]These comments were also not made by individuals with supervisory authority over plaintiff.

*v. Hattiesburg Municipal Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. 1981)). A demotion from a management position, and any ensuing humiliation and hurt feelings are insufficient evidence of constructive discharge. *See Hellums v. Webster Indus., Inc.*, 97 F. Supp. 2d 1287, 1297 (M.D. Ala. 2000).

      Plaintiff was demoted and testified to having heard a few racially derogatory remarks. He only complained to RAC management one time prior to his resignation. No reasonable person in plaintiff's position would feel compelled to resign. In fact, when he complained to his new manager, his manager urged him to "stick it out."

      In the Eleventh Circuit a constructive discharge claim will generally not be found unless the employer is given a sufficient time to remedy the situation. *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1998). Here, plaintiff testified he resigned after complaining to his new manager, Mansel Guin, a few weeks after his demotion. Thus, plaintiff did not give RAC sufficient time to remedy the situation. Because plaintiff's working conditions were not so intolerable that a reasonable employee would feel compelled to resign and because plaintiff did not give defendant sufficient time to remedy any unpleasant working conditions, defendant is entitled to judgment as a matter of law on plaintiff's claim that he was constructively discharged.

## IV. Conclusion

For the reasons stated herein, the court finds that no genuine issues of material fact exist and defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment will be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 29th day of March, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge